Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 50365 | **DATE** | 8/5/2002 |
| **CASE TITLE** | Bermudez vs. Ahrens, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants' motion for summary judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated on the reverse Memorandum Opinion and Order, defendants' motion for summary judgment is granted in part and denied in part. All of plaintiff's official capacity claims and claims against the City are hereby dismissed, as are all of her individual capacity claims against the individual defendants, except Ahrens and Randy Berke. All defendants except Ahrens and Randy Berke are hereby dismissed. Counsel for both sides are ordered to appear at a status hearing before Judge Reinhard on Wednesday, August 14, 2002 at 9:00 a.m.

(11) ■ [For further detail see order on the reverse side of the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| X | Notices mailed by judge's staff. | AUG - 6 2002 | 15 |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 8-5-02 | |
| | | date mailed notice | |
| /LC | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials |

(Reserved for use by the Court)

# MEMORANDUM OPINION AND ORDER

Plaintiff, Connie Bermudez, originally filed her four-count complaint against defendants, who are some eleven different police officers with the City of Rockford ("City"), sued in both their individual and official capacities, and the City itself, in an Illinois state court. Because the complaint alleged various constitutional violations under 42 U.S.C. § 1983, defendants removed the case to this court on the basis of federal question jurisdiction. See 28 U.S.C. §§ 1331, 1441. Venue is proper under 28 U.S.C. § 1391. Before the court is defendants' motion for summary judgment, filed pursuant to Federal Rule of Civil Procedure 56.

In her response brief, Bermudez affirmatively disclaims any interest in pursuing her claim against the City, her official capacity claims, or her individual capacity claims against the individual defendants except Ahrens and Randy Berke. The court thus grants defendants' motion as to these claims and turns to the individual capacity actions against Ahrens and Berke.

Bermudez seeks to hold these two officers liable for an excessive amount of force she claims was used to arrest her on September 24, 1998 during a raid of a bar she owned, The Victory Tap. Because the officers have raised the defense of qualified immunity, the court engages in a two-step inquiry. First it considers the "threshold question" of whether, taking the facts in the light most favorable to Bermudez, the officers' conduct violated her constitutional rights. See Saucier v. Katz, 533 U.S. 194, 201 (2001). If such a violation could be made out on a favorable view of the evidence, then the next, sequential step is to ask whether the constitutional right at issue was clearly established, such that a reasonable official would understand that what he was doing violated that right. See id.; Morell v. Mock, 270 F.3d 1090, 1094 (7th Cir. 2001).

Although a very close call, the court finds Bermudez has enough evidence (just barely) in her favor to create an issue of fact over whether the amount of force Ahrens used to handcuff her surpassed what was "objectively reasonable in light of the facts and circumstances confronting [him]." Smith v. Ball State Univ., No. 01-4086, – F.3d –, 2002 WL 1456715, at *4 (7th Cir. July 8, 2002) (quoting Graham v. Connor, 490 U.S. 386, 397 (1989)). When Ahrens arrested Bermudez, he grabbed her left wrist and began to bring her arm back to handcuff her. Bermudez then told him it was her bad arm and would not go behind her back. Bermudez testified in her deposition she has a slight case of cerebral palsy and her left scapula bone is turned sideways, so her left arm literally cannot go behind her back. The officers also accept Bermudez' testimony (at least for purposes of their summary judgment motion) that Ahrens would have felt "some resistance" while trying to pull her left arm backwards and that Ahrens "tried to pull [her] left hand behind [her] back and was not able to do it." A reasonable inference from all of this is that Ahrens could tell by pulling on Bermudez' left arm that it was physically unable to go behind her back. And if that is true, then to continue trying to pull the arm backwards and handcuff Bermudez behind her back, as Ahrens did a few more times in the face of Bermudez' protests to the contrary, could be seen by a jury as objectively unreasonable. Indeed, it may not have been necessary to handcuff Bermudez at all considering that the officers concede (1) she was not resisting or evading arrest but was, to the contrary, completely cooperative, (2) she was not a threat to the safety of the officers or others (in fact, one eyewitness testified that a few minutes later one of the officers said "this is bull" and unhandcuffed Bermudez), and (3) the crime she was being charged with – gambling – was not very severe or violent. See Smith, 2002 WL 1456715 at *4 (listing factors to analyze excessive force claim). In addition, the force used to pull Bermudez' arm back caused immediate, visible, physical reactions. It is undisputed that at one point after Ahrens pulled Bermudez' left arm back, Bermudez felt pain in her left shoulder and broke out into a sweat. Other witnesses testified she turned completely white and looked like she was going to pass out. She then began to feel weak and sick to her stomach and sat slumped in a nearby chair. Finally, there is evidence Bermudez had surgery on her left arm in May 2000 after physical therapy failed, although the rather incomplete record leaves it open whether this surgery was actually related to the arrest a year and a half earlier.[1]

The minimal record also prevents the court from dismissing Berke as a defendant at this time. Berke was assigned to assist Ahrens during the raid and testified that the method Ahrens used to handcuff Bermudez was "textbook." From this it could reasonably be inferred that Berke witnessed Bermudez being handcuffed from start to finish. And this would mean that if (crediting Bermudez' version of events) Berke saw Ahrens struggling to pull Bermudez' left arm behind her back and saw how the struggle affected her physically, and was aware of all the other circumstances surrounding her arrest, a reasonable jury could conclude he had reason to know that excessive force was being used but failed to intervene (there is no evidence that Berke was the officer who unhandcuffed Bermudez shortly afterwards). See Miller v. Smith, 220 F.3d 491, 495 (7th Cir. 2000).

As the cases indicate, police officers are not entitled to qualified immunity when they use force to restrain a suspect who has some visible or objective indicia of an injury or medical condition, or who they in fact know has such a condition, that makes her more vulnerable to the use of such force. See Estate of Phillips v. City of Milwaukee, 123 F.3d 586, 594 (7th Cir. 1997) (where officers aggravated arrestee's preexisting medical conditions by restraining him in prone position on floor, which ultimately caused his death, they were nevertheless entitled to qualified immunity because, in part, the arrestee's medical problems were not "observable to the untrained eye"), cert. denied, 522 U.S. 1116 (1998); Frazell v. Flanigan, 102 F.3d 877, 885 (7th Cir. 1996) (no qualified immunity where jury could have reasonably concluded that officer was aware plaintiff was suffering from epileptic seizure during arrest and officer's conduct in subduing plaintiff in face of that knowledge was objectively unreasonable), abrogated on other grounds by Saucier v. Katz, 533 U.S. 194 (2001); McNulty v. Village of Deerfield, No. 97 C 928, 1998 WL 30676 (N.D. Ill. Jan. 23, 1998) (where plaintiff claimed his diabetes caused him pain when officers handcuffed him, officers still acted reasonably because plaintiff offered no evidence that they were aware either of his medical condition or that the condition was aggravated by the handcuffs). See also Guite v. Wright, 147 F.3d 747, 750 (8th Cir. 1998) (no qualified immunity where officer restrained plaintiff, who was wearing a sling on his left arm, by taking hold of plaintiff, pushing him inside house, and holding him up against doorway); Howard v. Dickerson, 34 F.3d 978, 981 (10th Cir. 1994) (no qualified immunity on deliberate indifference claim that officer handcuffed plaintiff behind back when plaintiff was wearing neck brace and a third party told officer to handcuff plaintiff in front to avoid injuring her); Walton v. City of Southfield, 995 F.2d 1331, 1342 (6th Cir. 1993) (holding that excessive force claim can be premised on officer handcuffing plaintiff if officer knew plaintiff had an injured arm and if he believed plaintiff posed no threat to him). Thus, because there is a genuine issue of fact over whether the officers really could tell Bermudez' arm was not able to go behind her back, or whether it was simply a matter of Bermudez' unsupported pleas that it was her "bad arm," the court is unable at this time to find the officers did not violate a "clearly established" constitutional right under the second prong of the qualified immunity analysis.

For the reasons stated above, defendants' motion for summary judgment is granted in part and denied in part. All of Bermudez' official capacity claims and claims against the City are hereby dismissed, as are all of her individual capacity claims against the individual defendants, except Ahrens and Randy Berke. All defendants except Ahrens and Randy Berke are hereby dismissed.

---

[1] This is just one example where both sides have provided only the sketchiest evidence on certain matters. Of like effect is two rather skimpy one-page medical records the officers have introduced (which, by the way, are not accompanied by a supporting affidavit) from two separate exams Bermudez had after the arrest. One of these reports says Bermudez reported a history of cerebral palsy in her left upper extremity "but it was fully functional from this point of view." Without any testimony from the treating physician or some other medical expert, the court has no idea what this is supposed to mean. That said, had the officers introduced sufficient evidence regarding the extent of Bermudez' alleged injury, the court may very well have been inclined to find they used only a de minimis amount of force, especially considering that Bermdudez was apparently only handcuffed for a few moments, if at all, and did not complain to any of the officers during or after the arrest that her arm had been injured. But based on the record as it now exists, the court has no choice but to find otherwise. On a final note, the court reminds counsel for both sides that it is sometimes advantageous to submit the entire deposition of at least the key witnesses, rather than just selected excerpts.